UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:18-62713-CV-ALTMAN/HUNT

RYAN WALKER,

    Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,
an Ohio corporation,

    Defendant.
_____/

**JOINT STATEMENT OF AGREED FACTS REGARDING THE PARTIES'
RESPECTIVE MOTIONS FOR SUMMARY JUDGMENT**

Defendant United Parcel Service, Inc. (Ohio) ("UPS") and Plaintiff Ryan Walker ("Walker") submit the following Joint Statement of Agreed Facts germane to UPS's Motion for Summary Judgment [DE 52] and Ryan Walker's Motion for Summary Judgment [DE 54].

1. United Parcel Service, Inc. ("UPS") is the world's largest package delivery company, employing more than 400,000 employees in the United States and transporting more than five billion packages annually to more than 220 countries and territories.

2. In the United States, UPS's package operations are divided into two regions, and each region is divided into districts. A district may be divided into one or more divisions, each of which includes a number of "package centers" responsible for package delivery in an assigned geographic area and "hubs" responsible for routing packages to and from package centers and other hubs.

3. Each package center is managed by a business manager who oversees one or more supervisors. The business managers report to a division manager, who, in turn, reports to the

1

district operations manager. These individuals are "operations employees" – *i.e.*, they participate in UPS's day-to-day shipping work.

4. These operations employees are supported by various Human Resources personnel. UPS's Human Resources function is divided between two groups: 1) local personnel who primarily deal with day-to-day issues unique to the employees in a particular geographic location, and 2) a centralized, non-local department called the Human Resources Service Center ("HRSC") that administers certain UPS benefits and programs applicable to all employees. The HRSC is based in Overland Park, Kansas.

5. Like the operations employees, local HR personnel are organized into a hierarchy based on geography. Individual centers and hubs are staffed by full-time and part-time HR supervisors, who report to Area HR Managers ("AHRM"). The AHRMs report to an HR operations manager, who reports to the district HR Director.

6. Walker began working for UPS in the 1996 peak season.

7. On November 10, 2016, UPS demoted Walker from his position as a Business Manager at its Fort Lauderdale center to a new position at its Hialeah center. Walker was instructed to report to Hialeah on November 14, 2016, but he did not do so.

8. Walker reported to Division Manager Mike Alberni prior to his demotion.

9. At this time, the South Florida geographic region was supported by HR Director Rick Corral, HR Operations Manager Raul Simons, and AHRM Olivera Luna-Aloisio. In mid-January 2017, Harry Wilson replaced Corral as HR Director.

10. UPS is an employer governed by the FMLA.

11. In 2016, UPS utilized a bifurcated system for processing and administering employee benefits requests.

12. Specifically, UPS contracted with Aetna Life Insurance Company ("Aetna"), a third party, to administer its short- and long-term benefits programs. The HRSC, however, processed and administered its employees' requests for FMLA and personal leave.

13. Shortly after the November 10, 2016 demotion, Walker initiated a claim with Aetna on the grounds that he was suffering from a health issue. Aetna opened the claim file as a Short-Term Disability ("STD") claim under its then-prevailing procedures, since Aetna had no role in administering leaves of absence for UPS at that time.

14. Pursuant to its then-prevailing practice, Aetna informed the HRSC, which opened a concurrent application for FMLA leave on Walker's behalf.

15. In its initial correspondence to Walker, Aetna included a "Frequently Asked Questions" brochure specifically stating that "FMLA is separate from disability and not administered by Aetna" and directing Walker to "[p]lease call the Human Resource Service Center (HRSC) for any questions regarding FMLA."

16. The HRSC also sent Walker its own initial correspondence on November 16, 2016, explaining that it would conditionally treat his absences from work as FMLA-qualifying pending the outcome of his STD claim:

> Based on the nature of your absence, which appears to satisfy the definition of a "serious health condition," UPS will treat your absence beginning on November 10, 2016 as covered under the FMLA, and will designate and count this time against your FMLA leave entitlement. . . . Because you must submit medical documentation in connection with your disability application to Aetna, UPS will not require you to submit independent medical certification for purposes of securing FMLA leave at this time. **If your disability benefits are subsequently denied or terminated by Aetna, the HRSC will send you a letter advising you of your options.**

17. The HRSC also enclosed an FMLA brochure defining "serious health condition" and reminding Walker of his obligation to submit (if requested) medical information demonstrating his entitlement to FMLA leave.

18. Both Aetna and the HRSC also informed Business Manager Acosta and Division Manager Rodicio that Walker had applied for disability benefits and medical leave beginning November 10, but, following their standard practice, did not provide any specific information about the nature of Walker's alleged medical condition.

19. The HRSC initially approved Walker's FMLA leave until November 28, 2016 based on Aetna's representations that it would make an STD claim decision on or before November 29, 2016.

20. Meanwhile, Aetna began processing Walker's STD claim by requesting medical information from Dr. Aldo Alamo.

21. But, despite calling Dr. Alamo's office and faxing him two separate medical information forms, Aetna received no medical information relating to Walker's claims by the decision date.

22. Consequently, on November 29, 2016, Aetna suspended Walker's STD claim for lack of supporting medical documentation and gave him until December 19, 2016 to substantiate his need for disability benefits.

23. Aetna also sent an e-mail reflecting the suspended status to Walker's managers and to the HRSC.

24. Since Aetna reported that Walker's claim was still pending, the HRSC extended Walker's FMLA leave until December 19, 2016 as well.

25. On December 1, 2016 Walker submitted to Aetna a one-page "Work/School Status" note from Holy Cross Orthopedic Institute, bearing a date of November 21, 2016 and a return-to-work date of December 6, 2016, but including no information about the nature of Walker's underlying medical condition.

26. Aetna denied Walker's 2016 STD claim on or about December 20, 2016.

27. On December 30, 2016, the HRSC placed Walker on a personal leave of absence until January 23, 2017 and informed his managers of the extended timeframe.

28. UPS coded Walker's absences from November 10, 2016 to December 30, 2016 as FMLA protected.

29. Effective January 1, 2017, UPS transferred administrative responsibility for FMLA claims from the HRSC to Aetna, and no UPS employee had any further involvement in processing FMLA leave requests as of that date.

30. AHRM Luna-Aloisio sent Walker a letter on January 27, 2017 reiterating his need to "provide the required medical certification to HRSC to support your absence from work in a timely manner" and warning him, yet again, that "[f]ailure to do so may result in disciplinary action up to and including termination of employment."

31. Walker initiated a new FMLA and STD claim with Aetna on February 6, 2017.[1]

32. The same claims handler was responsible for both Walker's FMLA claim and STD claim in 2017.

33. On February 7, 2017, Aetna sent Walker correspondence explaining the claim process, which included a copy of a Health Care Provider Certification form for his physicians to complete in connection with this FMLA claim.

34. The Health Care Provider Certification form was originally due on February 23, 2017, but Aetna granted Walker an extension of seven additional days to submit it.

35. On April 3, 2017, AHRM Luna-Aloisio sent Walker a letter giving him a deadline of 5:00 p.m. on April 5, 2017 to submit medical paperwork supporting his absence and warning

---

[1] Aetna assigned a different claim number for each benefit Walker sought. The FMLA claim number was 15091524 and the STD claim number was 15091526. Occasionally, Aetna would address both claims in the same letter; other times, it would send correspondence pertaining to each claim separately.

5

him that UPS would "consider [him] to have resigned [his] employment with UPS" if he did not do so.

36. Walker received AHRM Luna-Aloiso's April 3, 2017 letter by mail on April 5, 2017.

37. On April 5, 2017, Walker's counsel sent a letter via facsimile at 3:09 p.m. to AHRM Luna-Aloisio, threatening litigation over "a number of employment issues" allegedly involving Walker and stating in part that "Mr. Walker is and intends to remain a UPS career employee, and will take any actions which are appropriate and legally necessary to remain so."

38. UPS claims that it terminated Walker's employment for absenteeism effective April 6, 2017.

| | |
|---|---|
| **BROWN ROBERT, LLP**<br>*Attorneys for Plaintiff*<br>150 N. Federal Highway, Second Floor<br>Fort Lauderdale, Florida 33301<br>Tel:   (954) 832-9400<br>Fax:   (954) 832-9430 | **SCHMOYER REINHARD LLP**<br>*Attorneys for Defendant*<br>17806 IH 10 West, Suite 400<br>San Antonia, TX 78257<br>Tel: (210) 447-8033<br>Fax: (210) 447-8036 |
| /s/ Connis O. Brown, III<br>Connis O. Brown, III<br>mailto:cbrown@brownrobert.com<br>Florida Bar No. 641960<br>Seth P. Robert<br>srobert@brownrobert.com<br>Florida Bar No. 145696 | /s/ Shannon B. Schmoyer<br>Shannon B. Schmoyer<br>(*admitted pro hac vice*)<br>sschmoyer@sr-llp.com<br><br>And<br><br>Brian L. Lerner<br>blerner@kvllaw.com<br>Kim Vaughan Lerner LLP<br>One Financial Plaza<br>100 SE Third Avenue, Suite 2001<br>Fort Lauderdale, Florida 33394<br>Telephone:   (954) 527-1115<br>Facsimile:   (954) 527-1116 |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel of record.

/s/ Connis O. Brown, III
Connis O. Brown, III, Esq.
cbrown@brownrobert.com
Florida Bar No. 641960
Seth P. Robert, Esq.
srobert@brownrobert.com
Florida Bar No. 145696
BROWN ROBERT, LLP
150 N. Federal Hwy., Suite 200
Fort Lauderdale, Florida 33301
Telephone: (954) 832-9400
Facsimile: (954) 832-9430

*Attorneys for Plaintiff Ryan Walker*